UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| JEFF WHITESELL, | ) | CIV. 13-5030 |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | **GRANTING IN PART AND** |
| vs. | ) | **DENYING IN PART** |
| | ) | **DEFENDANT'S MOTION** |
| ACUITY INSURANCE, INC., | ) | **TO DISMISS OR STAY** |
| | ) | [DOCKET NO. 6] |
| Defendant. | ) | |
| | ) | |

## INTRODUCTION

This diversity action is pending before this court alleging that defendant Acuity Insurance, Inc. ("Acuity"), failed in bad faith to pay plaintiff Jeff Whitesell's worker's compensation insurance benefits. Mr. Whitesell seeks both compensatory and punitive damages. Acuity has filed a motion seeking to dismiss, without prejudice, or in the alternative, to stay this action pending the conclusion of administrative proceedings in South Dakota state court. See Docket No. 6. The Chief District Judge, the Honorable Jeffrey L. Viken, referred Acuity's motion to this magistrate judge for decision. See Docket No. 12.

## FACTS

Because of the procedural posture of this case and the nature of Acuity's motion, the court takes as true all well-pleaded, plausible facts recited in Mr. Whitesell's complaint. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009); Bell

Atlantic Corp. v. Twombly, 550 U.S. 544, 563, 570 (2007).  From that document, and from undisputed facts asserted in the parties' briefs on Acuity's motion, the court gleans the following.

Jeff Whitesell injured his neck when he slipped on ice at work on October 12, 2009.  His employer had worker's compensation insurance through Acuity.  Acuity initially paid Mr. Whitesell disability benefits and medical benefits.  However, on the basis of a medical opinion from a doctor that Mr. Whitesell alleges Acuity knew or should have known was disreputable and lacking in medical credibility, Acuity terminated all benefits under its worker's compensation policy on September 24, 2010.

On November 9, 2010, Mr. Whitesell underwent neck surgery performed by Dr. Gust.  The cost of the surgery was paid for by Tricare, Mr. Whitesell's private health insurance company, as Acuity had by this time terminated benefits.  The face value of Mr. Whitesell's medical bills for this surgery was $102,546.43.  However, because Tricare had a contractual relationship with the medical providers involved, Tricare paid only $20,201.81 for the surgery.

Mr. Whitesell brought an action before the South Dakota Department of Labor ("DOL"), seeking an adjudication that Acuity owed him worker's compensation benefits.  The DOL ruled on April 24, 2012, that Acuity was "responsible for medical expenses and compensation benefits for [Mr.] Whitesell's low back after October 12, 2009" and is "responsible for

[Mr. Whitesell's] medical expenses and [worker's] compensation benefits for [Mr.] Whitesell's neck after October 12, 2009, including but not limited to the surgery performed by Dr. Gust." Docket No. 1 at 11. The DOL specifically held that Acuity was required to reimburse Mr. Whitesell and Tricare only for the $20,201.81 that Tricare had actually paid on Mr. Whitesell's behalf, rather than the $102,546.43 face value of the surgery.

Acuity then produced a report authored by a Wisconsin podiatrist-osteopath who, Mr. Whitesell alleges, was biased in favor of insurance companies. This podiatrist-osteopath had previously examined Mr. Whitesell. After the DOL issued its opinion, the next day the podiatrist-osteopath issued his report, opining that Mr. Whitesell's work injury was not the cause of his back or neck problems and that Mr. Whitesell needed no further medical treatment in connection with his work injury. On the basis of the report from the podiatrist-osteopath, Acuity again denied workers compensation benefits to Mr. Whitesell.

The DOL, after motion and briefing by the parties, ruled that Acuity had wrongfully relied upon the report of the podiatrist-osteopath to terminate Mr. Whitesell's workers compensation benefits. In March, 2013, the DOL approved a settlement agreement as to compensation between Acuity and Mr. Whitesell. That agreement specifically left open the question whether

3

Acuity should have to pay Mr. Whitesell and Tricare for the face value of his neck surgery or for the amount that Tricare actually paid.

On March 21, 2013, Mr. Whitesell filed an appeal of the DOL's decision determining that Acuity was responsible only for the approximately $20,000 paid by Tricare for Mr. Whitesell's neck surgery. While that administrative appeal was still pending before the state circuit court, Mr. Whitesell filed his complaint with this court on April 19, 2013. The state circuit court issued a ruling in Mr. Whitesell's favor on July 12, 2013, reversing the DOL. Acuity has now appealed the circuit court's decision to the South Dakota Supreme Court. Briefing on that appeal is not yet complete. Acuity now moves to dismiss or to stay this action until Mr. Whitesell's administrative appeal is finally concluded.

## DISCUSSION

Under South Dakota state law, the South Dakota Department of Labor is the administrative agency charged with the responsibility of adjudicating, in the first instance, claims made by injured employees for worker's compensation insurance benefits. See SDCL § 62-2-5. Once the DOL has issued a final order or decision, either the worker or his employer may appeal the decision of the DOL to a state circuit court. See SDCL §§ 1-26-30.2 and 62-7-19. Upon issuance of a final order by the state circuit court, appeal may be had before the South Dakota Supreme Court. SDCL § 1-26-37. Administrative remedies under the South Dakota workers compensation scheme are not final and

4

exhausted until all appeals are final, or until the time for pursuing an appeal to the next level has lapsed. Harms v. Cigna Ins. Cos., 421 F. Supp. 2d 1225, 1229 (D.S.D. 2006). This includes appeals to the South Dakota Supreme Court, where such appeals are pursued. Id.

This court has previously held that the doctrine of "primary jurisdiction" requires federal district courts to stay their hand on bad faith actions until the underlying workers compensation administrative remedies are exhausted. See Lagler v. Zurich American Ins. Co., Civ. No. 12-4037, 2012 WL 3264906, at *3-4 (D.S.D. Aug. 10, 2012). This is true even where, as here, the employee has received a decision that he or she is entitled to workers compensation benefits. Id. at 5.

Mr. Whitesell argues that this court should not stay this action pending the outcome of the appeal by Acuity to the South Dakota Supreme Court. He argues that the issue pending appeal is irrelevant to this action. The only issue before the South Dakota Supreme Court is whether Acuity must pay approximately $102,000 for Dr. Gust's neck surgery, or whether it must pay only approximately $20,000. In either event, Mr. Whitesell argues, he will be simply turning the money over to the medical care providers to whom it is owed, less a proportionate amount for attorney's fees.

The court cannot agree that the precise amount of money Acuity must pay for Dr. Gust's neck surgery is irrelevant. This case is founded on diversity

jurisdiction, which requires an amount in controversy in excess of $75,000. See 28 U.S.C. § 1332. So the amount of compensatory damages owed by Acuity to Mr. Whitesell under its workers compensation policy is certainly relevant to this court's jurisdiction of this case. In addition, whether Acuity owes $102,000 or $20,000 is relevant to a jury's determination of the amount of compensatory damages to award to Mr. Whitesell if he succeeds on his claim against Acuity, because the amount of money that should have been paid under the insurance contract is an element of compensatory damages for a bad faith claim. Bertelsen v. Allstate Ins. Co., 2013 S.D. 44, ¶12, ¶17, 833 N.W.2d 545, 553-554. Finally, because the reasonableness and constitutionality of punitive damages is judged, in part, on the ratio between the amount of compensatory damages and the amount of punitive damages awarded, the amount of compensatory damages is relevant to the punitive damages inquiry as well. State Farm Mut. Ins. Co. v. Campbell, 538 U.S. 408, 424-26 (2003).

     For all these reasons, the court finds that the issue of exactly how much Acuity owes to Mr. Whitesell and Tricare under the terms of its workers compensation insurance policy is relevant to several issues which are to be decided in this case. Furthermore, it is clear that Mr. Whitesell has not exhausted his administrative remedies–that will not be done until the South Dakota Supreme Court issues a decision on Acuity's appeal. See Lagler, 2012 WL 3264906, at *3-*4.

The court must decide whether to dismiss without prejudice or to stay this action. <u>Frisby v. Milbank Mfg. Co.</u>, 688 F.3d 540, 543 (8th Cir. 2012); <u>Access Telecomms. v. Sw. Bell. Tel. Co.</u>, 137 F.3d 605, 609 (8th Cir. 1998). The court determines that the latter is the better course. Every time a litigant files an action in district court, he is charged a filing fee. Mr. Whitesell has already paid his fee. Dismissal would require the refiling of another complaint at some point in the future with the attendant payment of another filing fee.

Also, the issue of Mr. Whitesell's entitlement to benefits under the worker's compensation policy issued by Acuity has already been determined in his favor, only the amount remains unknown. Finally, it appears that an appeal before the South Dakota Supreme Court can be quickly and efficiently concluded–there is a single issue presented on appeal and the record presents a question of law, not a question of fact. Thus, there does not appear to be required a searching review of an extensive administrative record in order to resolve the appeal. Under these circumstances, the court finds it would be unnecessarily punitive to dismiss the action and make Mr. Whitesell start over again at the conclusion of the administrative process.

## CONCLUSION

Based on the foregoing, the court hereby

ORDERS that the motion to dismiss or stay by defendant Acuity Insurance Company [Docket No. 6] is granted in part and denied in part. The

motion to dismiss is denied. The motion to stay is granted. The parties shall immediately notify the court when the South Dakota Supreme Court issues its written decision on Acuity's now-pending appeal. It is further

ORDERED that all discovery, filing of pleadings, and other activity in this case shall be held in abeyance until the South Dakota Supreme Court issues a written opinion on Acuity's now-pending appeal.

## NOTICE OF RIGHT TO APPEAL

Pursuant to 28 U.S.C. § 636(b)(1)(A), as to the portion of this opinion granting Acuity's motion to stay, any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law. As to the portion of this opinion denying Acuity's motion to dismiss, any party may seek reconsideration of this order before the district court and the district court will review that portion of this court's order *de novo*. The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained. See FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A). Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Id. Objections must be timely and specific in

order to require review by the district court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

Dated August 20, 2013.

BY THE COURT:

/s/ Veronica L. Duffy

VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE

9